```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| **THOMAS JAMES CLAUSO,** | Civil Action No. 18-12217(NLH) |
| Plaintiff, | |
| v. | OPINION |
| **WARDEN WILLIE BONDS, et al.,** | |
| Defendants. | |

APPEARANCES:

THOMAS JAMES CLAUSO
59252
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302
 Plaintiff, Pro Se

**Hillman**, District Judge:

       Currently before the Court is the complaint and motion for a temporary restraining order of Plaintiff Thomas James Clauso. (ECF No. 1). As Plaintiff is a convicted prisoner who has previously been granted in forma pauperis status, this Court is required pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to screen Plaintiff's complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from a party immune to suit.

       For the following reasons, this Court will dismiss Plaintiff's false charge and destruction of property claims as to all relevant Defendants, will dismiss Rutgers Correctional

1

Health Care from this matter without prejudice, will permit Plaintiff's remaining claims to proceed, and will deny Plaintiff's motion seeking a temporary restraining order (ECF No. 1 at 29-31) without prejudice.

## I. BACKGROUND

Plaintiff, Thomas James Clauso, is a convicted state prisoner who is currently incarcerated at South Woods State Prison. Plaintiff is elderly, and suffers from unspecified health issues which require that he use either a cane, walker, or wheelchair to move around. (ECF No. 1 at 11). According to the complaint, at some point in May 2018, Plaintiff was charged by Sergeant Chard with threatening to stab another guard named Martinelli with a screwdriver Plaintiff kept in his cell, a threat Plaintiff denies having made. (Id. at 1, 12). Plaintiff asserts that these charges were later dropped. (Id. at 18). Regardless, following these false charges, Chard, Martinelli, and two other guards named Hanson and Goldsborough began to harass Plaintiff apparently both because of the false charge and because Plaintiff "gets along to[o] well with black people." (Id. at 12, 4, 24).

According to Plaintiff, all three guards are racists who frequently make use of racial epithets against black people, and at least one – Chard – told Plaintiff that he was an avowed Nazi. (Id.). Plaintiff alleges that Chard has frequently

2

threatened to put him in his "iron maiden" – which the complaint suggests[1] may actually be a term used by the guards for one of the mental health watch cells which Plaintiff refers to as the "rubber room," and claims that he has used this "iron maiden" to kill black inmates in the past. (Id. at 12). Chard apparently also told Plaintiff that he learned unspecified torture techniques "from Apartheid." (Id. at 12).

In addition to these allegations of harassment and racial epithets, Plaintiff's complaint also alleges various claims related to the conditions of his confinement. According to Plaintiff, Plaintiff was for a period of a few weeks confined to his cell, denied access to a shower, denied exercise time, denied his walking equipment or a wheelchair, and was essentially left to fester in his cell by Chard, Hansen, and Martinelli. Plaintiff further alleges that the guards refused to turn on the lights in his cell. (Id. at 12-21).

These conditions have led to him suffering from a rash, for which he was eventually given a cream by the medical department

---

[1] Plaintiff's complaint is lengthy, handwritten, difficult to read, and may be missing pages. Plaintiff's allegations in any event are somewhat unclear – they weave back in on themselves and it is not always clear whether some repeated allegations refer to the same incidents or incidents which reoccurred. It is also difficult to discern from Plaintiff's complaint the exact timeline of when Plaintiff was confined to his cell, and how much of the time that he claims he has been without a shower or yard time overlaps with his temporary confinement to the "rubber room" in May 2018.

3

that proved ineffective without proper cleaning, and various other physical and mental health issues. (Id.). Throughout this period, Plaintiff was also threatened by the three named guards, and in one incident Plaintiff was physically assaulted by Goldsborough during a handcuffing which resulted in Plaintiff's arm being dislocated without reason. (Id. at 24).

At some point during this period of maltreatment, in late May 2018, Plaintiff placed a sick call slip seeking mental health treatment. (Id. at 12-13, 25). Mental health nurses, including nurse Amanda Williams, thereafter came to see him to ask him questions about his request, which Plaintiff refused to answer with the above named guards present. (Id.). Apparently unhappy with this refusal, Williams summoned the guards, but Plaintiff continued to refuse to answer the questions. (Id.).

Chard and Williams thereafter had plaintiff placed in the "rubber room" without first seeking proper authorization from a doctor. (Id.) During this time in the "rubber room", Plaintiff was left naked in the room without his walking equipment and thus was forced to endure the dirt, mess, and biological material that was on the floor of that room while the guards and Williams watched. (Id. at 25-26). Plaintiff remained in that room until he was seen by a doctor several days later who released him as there was no basis for this confinement to the rubber room. (Id.). Plaintiff was thereafter returned to his

4

cell, where the above referenced maltreatment continued. Plaintiff's period of time without yard time or a shower apparently went on for at least twenty-one total days. (Id. at 31).

Plaintiff further alleges that throughout this time period, the four named guards destroyed many of his possessions and several hundred pages of documents he had copied. (Id. at 12-25). Plaintiff also claims that Goldsborough began intercepting his legal mail, forging Plaintiff's signature on documents, and sending them back to various courts without ever delivering the mail to Plaintiff. (Id. at 24). Goldsborough apparently also prevents legal mail from being delivered to Plaintiff in those instances in which he does not engage in this alleged forgery. (Id.).

In addition to the above-named individuals, Plaintiff also seeks to bring claims against the warden of South Woods State Prison, Willie Bonds, based on his having filed grievances and other letters seeking to raise these issues to Bonds' attention. (Id. at 22-23). Plaintiff alleges that Bonds, however, fully approved of the situation and told Goldsborough to tell Plaintiff to cease his complaints or he would have Chard "finish [him] off." (Id.). Plaintiff also seeks to raise a claim against Rutgers Medical based on its running of the prison medical department, but Plaintiff provides scant detail about

this claim other than to assert that he believes Rutgers Medical runs the facility poorly and overcharges the state. (Id. at 11). Plaintiff identifies no policy or practice of Rutgers Medical which resulted in the alleged violations of his rights.

**II. DISCUSSION**

**A. Legal Standard**

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, seeks monetary relief from a defendant who is immune from such relief, or is on its face unexhausted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) [or § 1915A] is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

7

defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Id. (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to bring a claims against various prison officials for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[2] "To establish a claim under 42 U.S.C. §

---

[2] In his complaint, Plaintiff also asserts several other statutes that he believes would provide this Court with jurisdiction including the ADA, the RICO Act, various unspecified "bias intimidation" statutes, and the Ku Klux Klan Act. Plaintiff, however, pleads no facts in his complaint directly relevant to these apparent non-1983 claims. This Court thus does not construe his complaint to be raising claims under these other statutes as Plaintiff invokes them in name only and does not attempt to plead claims under these statutes, and thus has provided no more than a conclusory allegation that he has a claim under them. Iqbal, 556 U.S. at 678.

1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); see also Woodyard v. Cnty. of Essex, 514 F. App'x 177, 180 (3d Cir. 2013) (section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini, 212 F.3d at 806 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)).

Here Plaintiff appears to be raising the following claims – a conditions of confinement claim against Defendants Chard, Goldsborough, Hansen, Martinelli, Bonds, and Williams; a claim for destruction of property against the four guards; a claim for targeted harassment unrelated to prison needs by the four guards; a claim for denial of medical care related to the seizing of his walkers and wheelchair by the four guards; an excessive force claim against Goldsborough; a false charge related claim against the four guards, and a legal mail claim against Defendants Goldsborough and Bonds. This Court has reviewed Plaintiff's conditions of confinement, targeted

9

harassment,[3] denial of medical care, excessive force, and legal mail claims and finds that they are sufficiently pled that they should proceed at this time against the relevant Defendants.[4]

Plaintiff's destruction of property and false charge claims, however, must be dismissed at this time. The filing of a false report is not itself a constitutional violation absent an accompanying denial of Due Process. See Washington v. Essex Cnty. Sheriff's Dep't, No. 14-7453, 2017 WL 4858120, at *2 (D.N.J. Oct. 25, 2017) (quoting Ellis v. Vergara, No. 09-2839,

---

[3] Although the Court is aware that verbal harassment, without more and even where accompanied by racial slurs or other harsh language, is not usually sufficient to amount to a violation of the Eighth Amendment, see, e.g., Richardson v. Sherrer, 344 F. App'x 755, 757 (3d Cir. 2009); McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000), the Supreme Court in Hudson v. Palmer, 468 U.S. 517, 528-530 (1984), held that the intentional and targeted harassment "of even the most hardened criminals cannot be tolerated" and may give rise to liability under the Eighth Amendment where the harassment is continuous and calculated and is not related to prison needs. This Court construes Plaintiff to be raising such a claim, and does not construe him to be raising claims related to individual harassing incidents based solely on threats or harsh language.

[4] Plaintiff states an intention to sue all Defendants in their individual and official capacities. Because Plaintiff seeks both money damages and injunctive relief, this Court need not dismiss the official capacity claims. The Court notes, however, that Plaintiff may not recover money damages against Defendants in their official capacities as such claims are really claims against either the State, which is immune, or Rutgers Medical, against whom Plaintiff has failed to state a claim for the reasons discussed below. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978); Wills v. Michigan Dep't of State Pol., 491 U.S. 58, 65-66 (1989); Grohs v. Yatauro, 984 F. Supp. 2d 273, 280-81 (D.N.J. 2013).

2009 WL 4891762, at *5 (D.N.J. Dec. 15, 2009). As Plaintiff has pled that the alleged false charge was "thrown out," he has not asserted a denial of Due Process, and his false charge claim must be dismissed.

Similarly, although prisoners may have a Due Process right to the retention of their property, where "a state actor deprives an individual of property without authorization, [however,] either intentionally or negligently, that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available. See Hudson[, 468 U.S. at 530-36]; Parratt v. Taylor, [451 U.S. 527, 543-44] (1981); overruled in part on other grounds, Daniels v. Williams, [474 U.S. 327] (1986)." Love v. New Jersey Dep't of Corr., No. 14-5629, 2015 WL 2226015, at *5 (D.N.J. May 12, 2015); see also Miller v. Fraley, No. 12-4470, 2015 WL 511296, at *11 (D.N.J. Feb. 6, 2015). As New Jersey has provided such a post-deprivation remedy in the form of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 et seq., Plaintiff's destruction or damaging of property claims fail to state a cognizable claim for relief under § 1983. Love, 2015 WL 2226015, at *5. Plaintiff's property claims must therefore be dismissed.

Plaintiff also names as a Defendant in this matter Rutgers University Correctional Health Care, the entity which runs the

11

prison's medical department, although he does not outline the exact contours of the claim he wishes to raise against that entity. A third party state contractor entity may only be held liable under § 1983 where the contractor has direct involvement in the alleged wrong, which will normally only occur where the alleged constitutional violation is the result of a policy, practice, or custom put into effect by the contractor entity. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). Plaintiff has failed to identify any policy or practice of Rutgers which resulted in the alleged constitutional violations, and has not otherwise pled the direct involvement of Rutgers in the claims he has raised. Plaintiff has thus failed to state a viable claim for relief as to Rutgers, and Rutgers is dismissed from this matter without prejudice.

Finally, Plaintiff filed alongside his complaint a motion seeking a temporary restraining order directing Defendants to cease "hurting" him, provide him yard time, and permit him to shower. (ECF No. 1 at 29-31). Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002). In order to establish that he is entitled to extraordinary relief in the form of a preliminary injunction or temporary restraining order, Plaintiff must

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998) (as to preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990).

Ward v. Aviles, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). In order to succeed on his motion, Plaintiff must therefore demonstrate a "reasonable probability of eventual success in the litigation." Bennington Foods, LLC v. St. Croix Renaissance Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008). To satisfy this requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt, rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Ward, 2012 WL 2341499 at *2 (quoting Oburn v. Sapp, 521 F.2d 142, 148 (3d Cir. 1975)).

Although this Court has determined that certain of Plaintiff's claims are sufficient to survive screening and warrant a responsive pleading from Defendants, at this time Plaintiff has provided the Court with nothing but his own assertions, and has not presented any evidence in support of

13

those allegations in his motion.  This Court finds that Plaintiff has therefore failed to establish a reasonable probability that he will prevail on this matter.  Plaintiff's motion is therefore denied without prejudice at this time.[5]

## IV. CONCLUSION

For the reasons set forth above, this Court will dismiss Plaintiff's destruction of property and false charge claims, will dismiss Rutgers University Correctional Health Care from this matter without prejudice, the Court will permit Plaintiff's remaining claims to proceed at this time, and Plaintiff's motion seeking a temporary restraining order (ECF No. 1 at 29-31) is denied without prejudice.  An appropriate order follows.

Date:   July 3, 2019                    s/ Noel L. Hillman
                                                Hon. Noel L. Hillman,
                                                United States District Judge

At Camden, New Jersey

---

[5] The Court further notes that Plaintiff has not filed anything on the docket of this matter since August 2018.  It is thus completely unclear if the situation Plaintiff raises in his motion has continued or is otherwise ongoing, and it is therefore unclear that injunctive relief would be warranted or necessary in any event.  If the situation has continued, Plaintiff is free to file a new motion seeking injunctive relief, accompanied by whatever evidence he may have in this matter.