UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                :
THOMAS JAMES CLAUSO,            :
                                :
          Plaintiff,           :    Civ. No. 18-12217 (NLH) (LHG)
                                :
     v.                         :         AMENDED OPINION[1]
                                :
                                :
                                :
WARDEN WILLIE BONDS, et al.,    :
                                :
          Defendants.          :
                                :
_____:

APPEARANCES:

Gurbir S. Grewal, Attorney General of New Jersey
Niccole L. Sandora, Deputy Attorney General
Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
PO Box 116
Trenton, NJ 08625

     Counsel for Defendants Willie Bonds, Guard Hansen, and
Guard Martinelli

Thomas James Clauso
59252
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302

     Plaintiff pro se

_____

[1] On March 23, 2021, the Court received a letter from Plaintiff, ECF No. 67, indicating that the prison was misidentified in the Opinion dated March 15, 2021, ECF No. 61.  The amended opinion corrects this error.

HILLMAN, District Judge

This matter comes before the Court on Willie Bonds', Guard Hansen's, and Guard Martinelli's (collectively "Defendants") motion for summary judgment.  ECF No. 47.  Plaintiff Thomas Clauso has filed several letters opposing the motion for summary judgment.  ECF Nos. 56, 58, 59.

For the reasons stated herein, the Court will grant the motion for summary judgment in part.  Summary judgment will be denied to Guard Hansen on the excessive force claim and to Guard Martinelli on the denial of showers claim.

I.   BACKGROUND

Plaintiff has submitted letters and documentation in opposition to the motion but no opposing statement of material facts.  As such, the Court accepts Defendants' statement of material facts not in dispute ("DSOF"), ECF No. 47-1, as true. See Fed. R. Civ. P. 56(e)(2).

Plaintiff is a convicted and sentenced state prisoner currently detained in South Woods State Prison ("SWSP"), Bridgeton, New Jersey.  DSOF ¶ 1.  On July 26, 2018, Plaintiff filed a lawsuit under 42 U.S.C. § 1983 against Defendants and other individuals raising claims regarding the conditions of his confinement.  Id. ¶¶ 3-4.  Prior to Plaintiff's transfer to SWSP in April 2018, Plaintiff received disciplinary sanctions at Northern State Prison for prohibited act *.704, perpetrating

frauds, deceptions, confidence games, riots or escape plots, a
category B offense.  Id. ¶ 8.  The hearing officer imposed 155
days administrative segregation, 155 days loss of computation
time, 20 days loss of recreation privileges, and 10 days loss of
telephone privileges as sanctions.  Id.  Plaintiff was placed
into SWSP's Administrative Close Supervisor Unit ("ACSU") C-Pod
1029 C after his transfer due to the charges from Northern
State.  Id. ¶¶ 7-8.  "[H]e was housed in ACSU C-Pod 1029 C from
April 19, 2018 to May 27, 2018, and the[n] again from May 28,
2018 to August 22, 2018."  Id. ¶ 9.

According to the complaint,[2] Guard Martinelli falsely
claimed that Plaintiff threatened to stab him with a screwdriver
Plaintiff kept in his cell.  ECF No. 1 at 16.  On or about May
27, officers took Plaintiff to "the rubber room."  Id. at 17.
Sergeant Chard threatened Plaintiff with his "Iron Maiden" and
said they "got the idea from Apartheid."  Id.  Plaintiff alleges
Guard Martinelli threatened to chain his face to the toilet.
Id.  The disciplinary charges against Plaintiff were later

---

[2] "Plaintiff's complaint is lengthy, handwritten, difficult to
read, and may be missing pages.  Plaintiff's allegations in any
event are somewhat unclear – they weave back in on themselves
and it is not always clear whether some repeated allegations
refer to the same incidents or incidents which reoccurred.  It
is also difficult to discern from Plaintiff's complaint the
exact timeline of when Plaintiff was confined to his cell, and
how much of the time that he claims he has been without a shower
or yard time overlaps with his temporary confinement to the
'rubber room' in May 2018." ECF No. 3 at 3 n.1.

dropped, but the officers allegedly continued to harass Plaintiff.  Id. at 18.  Plaintiff alleged that the officers were "all racist, Nazis and white Supremacists" and described various acts of torture against Black people.  Id.  Plaintiff claims he informed Administrator Bonds of all this, and Administrator Bonds responded at one point that if Plaintiff "[kept] it up," Administrator Bonds "would have Sgt. Chard finish [him] off." Id. at 22-23.

Plaintiff's complaint also alleges various claims related to the conditions of his confinement.  According to Plaintiff, Plaintiff was confined to his cell for a period of a few weeks. During this time, Plaintiff states that he was denied access to a shower, denied exercise time, denied his walking equipment or a wheelchair, and was essentially left to fester in his cell by Chard, Hansen, and Martinelli.  Plaintiff further alleges that the guards refused to turn on the lights in his cell.[3]

On July 3, 2019, the Court screened the complaint under 28 U.S.C. § 1915(e) and permitted a conditions of confinement claim against Defendants Chard, Goldsborough, Hansen, Martinelli, Bonds, and Williams; a claim for targeted harassment unrelated

---

[3] Plaintiff made other allegations against people who are not parties to the motion for summary judgment.  The Court need not address those claims at this time since Defendants Chard, Goldsborough, and Williams have not entered an appearance in this matter.

to prison needs by the four guards; a claim for denial of medical care related to the seizing of his walkers and wheelchair by the four guards; an excessive force claim against Goldsborough; and a legal mail claim against Defendants Goldsborough and Bonds to proceed.  ECF No. 3.  Defendants Hansen, Martinelli, and Bonds now move for summary judgment on Plaintiff's claims against them.  ECF No. 47.

II.  STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

5

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

III. DISCUSSION

Defendants argue Plaintiff's claims against them should be dismissed because he failed to exhaust his administrative remedies. Alternatively, Defendants argue that Plaintiff cannot prove his constitutional claims as a matter of law.

A.   Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available'

6

before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Id. at 1856 (citing Woodford v. Ngo, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). This includes constitutional claims, Woodford, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." Smith v. Lagana, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004)). "Failure to exhaust is an affirmative defense the

defendant must plead and prove[.]"   Small v. Camden Cty., 728
F.3d 265, 268 (3d Cir. 2013).

"As formulated in this Circuit, the failure-to-exhaust
affirmative defense has two distinct stages.  The first inquiry
is whether the prison-employee defendants can demonstrate that
the inmate failed to exhaust the on-the-books remedies." West
v. Emig, 787 F. App'x 812, 814 (3d Cir. 2019).  Defendants
present the certification of Edward Hugh Haas, Esq., who is
employed by the State of New Jersey Department of Corrections as
a Legal Specialist in the Office of Legal and Regulatory
Affairs, in support of their motion.  Certification of Edward
Hugh Haas, Esq. ("Haas Cert."), ECF No. 47-7 ¶ 3.

Mr. Haas states "the DOC utilizes a multi-level inmate
remedy system (IRS) to allow inmates access to appropriate
correctional facility staff and administration in order to
obtain information and for the review and potential resolution
of grievances."  Id. ¶ 14.  He further certifies that kiosks
maintained by JPay, a privately held corrections-related service
provider, are located within each housing unit of each DOC
facility.  Id.  "Through the Kiosks, inmates can submit JPay
inquiry forms to obtain information, file grievance forms,
concerns and complaints to correctional facility staff.  They
can also file administrative appeals of grievances, which go
directly to the Administrator or Administrator's designee, to

8

appeal decisions or findings rendered by correctional facility staff." Id.

Mr. Haas describes the internal remedy process at SWSP:

Pursuant to DOC policy, an inmate inquiry form should be utilized to make routine inquiries to obtain information. Inquiry forms are to be addressed within fifteen (15) days. They are not subject to administrative appeal. If there are additional questions, the inmate should submit a new inquiry form. An inmate grievance form should be utilized when there are circumstances or actions an inmate believes to be unjust or grounds for complaint. They must be submitted within ten (10) of the date of the incident/issue unless it is not possible. Inmates should provide a summary of details, date, time and individuals involved and description of the incident. Supportive documents or other information may be attached. Inmate's grievance forms are to be responded to within thirty (30) days.

Pursuant to DOC policy, inmates may appeal a staff response to a grievance form if he/she is dissatisfied with the response. This is done by using the appeal section of the inmate grievance form, to file an administrative appeal. This must be done within ten (10) days of the receipt of the disputed grievance response. The administrator or administrative designee has ten (10) working days to answer the appeal, excluding weekends and holidays. The decision or finding of the Administrator or designee is the final level of review and the final finding of the New Jersey Department of Corrections.

Id. ¶¶ 15-16.

Defendants submitted copies of 12 grievances filed by Plaintiff that pertain to the allegations in the complaint. Id. ¶ 6; ECF No. 47-9. Mr. Haas certifies that "[t]he DOC does not have any records of Director Bonds receiving any other letters or information from Clauso." Hass Cert. ¶ 6.

The Court finds the following grievances to be exhausted:
Grievance SWSP18015934 dated June 16, 2018 alleging inadequate
medical care, ECF No. 47-9 at 6; Grievance SWSP18017252 dated
June 24, 2018 alleging Plaintiff was denied his prescription
skin cream, id. at 8;[4] Grievance SWSP18018211 dated June 29,
2018, alleging Guard Hansen was "purposely closing [Plaintiff's]
skin in the handcuffs", id. at 9; Grievance SWSP18018374 dated
June 30, 2018, alleging Plaintiff was placed on Camera Watch
without notice and was being denied showers and exercise, id. at
11;[5] Grievance SWSP18018844 dated July 3, 2018, alleging Sgt.
Chard and other officers were denying Plaintiff showers and
exercise, id. at 12; and Grievance SWSP18019330 dated July 6,
2018, reiterating the allegation that Plaintiff was being denied
showers, exercise, and legal access, id. at 13.  Under SWSP's
protocols, these are the only claims that have been properly

---

[4] Defendants argue Grievance SWSP18017252 was not appealed.  ECF
No. 47-2 at 16-17.  The record indicates Plaintiff appealed on
August 5, 2018 and Administrator Bond responded on August 6,
2018.  ECF No. 47-9 at 8.  The Court find this claim to have
been exhausted.

[5] Defendants argue Grievance SWSP18018374 was not appealed.  ECF
No. 47-2 at 18.  Plaintiff submitted his grievance on June 30,
2018 and Administrator Bonds responded on August 6, 2018.  ECF
No. 47-9 at 11.  As the response was more than 30 days from the
filing of the grievance, it is considered exhausted.  See
Robinson v. Superintendent Rockview SCI, 831 F.3d 148 (3d Cir.
2016).  Additionally, the Administrator issued the first
response so the highest authority in the prison has already
addressed the grievance.

exhausted.  See Jones v. Bock, 549 U.S. 199, 218 (2007).  The
Court concludes that Plaintiff exhausted his claims that he
received "terrible medical care" and was denied prescribed
medication, that Guard Hansen purposefully used excessive force
in handcuffing him, and that Plaintiff was denied showers and
exercise while on Camera Watch.

Plaintiff did not exhaust his other claims that were
permitted to proceed past this Court's § 1915 screening:
targeted harassment (excluding the allegation of excessive force
by Guard Hansen), improper seizure of his walkers and
wheelchair, and interference with his legal mail.  "[O]nce the
defendant has established that the inmate failed to resort to
administrative remedies, the onus falls on the inmate to show
that such remedies were unavailable to him."  Rinaldi v. United
States, 904 F.3d 257, 268 (3d Cir. 2018).  Plaintiff has not
submitted any evidence contradicting Defendants' assertions;
therefore, the Court considers whether a reasonable factfinder
could conclude that SWSP's remedies were unavailable to
Plaintiff on the record before the Court.

The Supreme Court has identified at least "three kinds of
circumstances in which an administrative remedy, although
officially on the books," is not "available" because it is "not
capable of use to obtain relief": (1) when "it operates as a
simple dead end — with officers unable or consistently unwilling

11

to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1859-60 (2016).  The Third Circuit has also found remedies to be unavailable to inmates when prison officials failed to comply with their own deadlines for responding to grievances, Robinson v. Superintendent Rockview SCI, 831 F.3d 148 (3d Cir. 2016), and "where an inmate is deterred from pursuing an administrative grievance by a prison official's serious threats of substantial retaliation," Rinaldi, 904 F.3d at 267.

There is no indication that prison officials took affirmative action to prevent Plaintiff from filing grievances, whether by intimidation or some other means.  Plaintiff filed several grievances concerning his claims and appealed some of them to Administrator Bonds.  See generally ECF No. 47-9.  The record also indicates that the grievance procedure was not a "dead end."  Plaintiff received responses from prison staff, whether by directing him to follow the appropriate procedures or investigating his allegations.  For example, the prison investigated Plaintiff's claim that Guard Hansen injured Plaintiff while handcuffing him.  Id. at 9.  The investigation

concluded the allegation was "unfounded but nonetheless staff was reminded about proper protocol and procedure for the application of restraints." Id. Plaintiff may not have always received the result he wanted, but he did receive responses from staff. Plaintiff's frequent use of the system, including filing appeals of initial responses, indicates the system was not too confusing for a reasonable inmate to use.

There are some grievances where the prison did not comply with the 30-day response time as stated in the handbook. "'A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.'" Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016) (quoting Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam)). Accordingly, the Court considers Grievance SWSP18008521, filed May 5, 2018 and responded to June 19, 2018 (37 days) ECF No. 47-9 at 2, and Grievance SWSP18012498, filed May 26, 2018 and responded to June 29, 2018 (34 days) id. at 3, to be exhausted.

Based upon the evidence submitted, the Court concludes Plaintiff failed to exhaust his available prison remedies for his targeted harassment and interference with his legal mail claims. Defendants are entitled to judgment as a matter of law on these claims.

B.   Merits

Defendants also move for summary judgment on the merits of the claims against them.  A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Defendants argue they are entitled to judgment as a matter of law on Plaintiff's conditions of confinement claim against Hansen, Martinelli, and Bonds, targeted harassment claims against Hansen and Martinelli; denial of medical care claims; and a legal mail claim against Bonds.

1.   Denial of Medical Care

14

Plaintiff alleges Guards Hansen and Martinelli denied him adequate medical care in violation of the Eighth Amendment when they seized his wheelchair and walker cane.  He also alleges Administrator Bonds was deliberately indifferent to Plaintiff's "terrible" situation and did not provide Plaintiff with hydrocerin skin cream.

To prove an Eighth Amendment Claim, a plaintiff must show that defendants were deliberately indifferent to his or her serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To accomplish this, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (second alteration in original)).

"[T]he failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances."  Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995).  The Court concludes there is a factual dispute as to whether Plaintiff had a serious medical need for a wheelchair, brace, or cane.  Defendants argue that there was no medical necessity at the relevant time since the order for those items had expired at the time they were taken.  ECF No. 47-9 at

15

3.   They assert that the alert on Plaintiff's face sheet that states: "NEED FOR WHEEL CHAIR OR OTHER DEVICE," ECF No. 47-4 at 2, "was placed on [Plaintiff's face sheet after medical orders were entered on September 19, 2018." ECF No. 57 at 1-2. "Thus, the medical brace and/or cane were removed from Clauso's possession in May 2018 because there was no active medical order those pieces of equipment at that time. When he filed his grievance regarding the brace and cane he was advised by the medical patient advocate that there were no active medical orders for either." Id. at 2. "At no time after these items were deemed medically necessary was Clauso denied access to those items, nor does he allege he was denied access aside from this May 2018 incident prior to the medical alerts being in place." Id.

However, Plaintiff submitted copies of medical records dated May 3, 2018 which includes a reference to an order for a "wheelchair [EQ021]." ECF No. 58 at 8. This predates the May 26, 2018 grievance about the seizure of the items. He also provided records from East Jersey State Prison dated June 21, 2016 that state "Per Medical Dpt I/M has cane permanent . . . ." Id. at 9. There are also orders that indicated a wheelchair was necessary in March 2018, before it was seized in May 2018. ECF No. 57-2 at 4. The conflicting medical records indicate there

is a genuine dispute as to the objective prong of the Eighth
Amendment analysis.

Defendants are entitled to summary judgment despite this
dispute because there is no evidence the officers acted with
deliberate indifference.  "Deliberate indifference is a
'subjective standard of liability consistent with recklessness
as that term is defined in criminal law.'" <u>Natale v. Camden
Cnty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (quoting
<u>Nicini v. Morra</u>, 212 F.3d 798, 811 (3d Cir. 2000)).  Assuming
there was a current order for a medical device in May 2108,
Plaintiff must submit more than a scintilla of evidence that
Guards Hansen and Martinelli actually knew of and intentionally
ignored that order; it is not enough to say they should have
known of its existence.  <u>Farmer</u>, 511 U.S. at 837-38.  "[A]n
official's failure to alleviate a significant risk that he
should have perceived but did not, while no cause for
commendation, cannot under our cases be condemned as the
infliction of punishment." <u>Id.</u> at 838.  Plaintiff has not
provided any evidence from which a reasonable factfinder could
conclude that Hansen and Martinelli were deliberately
indifferent to his need for the devices.  The Court will grant
summary judgment on this claim.

The Court will also grant summary judgment on Plaintiff's
vague claim of "terrible" medical care.  Plaintiff submitted a

grievance directed to Administrator Bonds stating "this situation with medical is [terrible] . . . ." ECF No. 47-9 at 6. There is no clarification what the "situation" is other than mentioning someone had cursed at him and "dose'nt [sic] care about who my people calls about my health[.]" Id. The person accused of providing poor care is not a defendant. A general accusation of a terrible situation does not prove a serious medical condition. Plaintiff's grievance does not explain what medical treatment was being denied or how the situation was "terrible" other than objecting to the person's demeanor.

Administrator Bonds noted in his response that he was forwarding Plaintiff's complaint to the Patient Advocate and gave Plaintiff the contact information for the Statewide Patient Advocate. Id. In the absence of a more specific complaint, directing Plaintiff to the Patient Advocate does not indicate deliberate indifference. See Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) ("The written responses to those grievance show that the prison officials ensured that [plaintiff] was under the care of medical personnel and being treated, and therefore that the officials were not deliberately indifferent."). Summary judgment is appropriate for all Defendants as there is no allegation against Hansen and Martinelli and there is no evidence that Administrator Bonds was deliberately indifferent.

18

Plaintiff's third medical complaint is that Administrator Bonds did not ensure Plaintiff was given hydrocerin cream for a skin condition.  Plaintiff stated in his grievance that he sustained severe damage to his skin while deployed overseas and had been treated with hydrocerin.  ECF No. 47-9 at 8.  "All of a sudden my hydrocerin has been abruptly replaced with mentholated cream irritates, burns, and aggravates my skin condition." Id. Staff responded that the hydrocerin order expired three weeks prior.  Id.

Defendants' evidence indicates the skin cream had only been prescribed on a temporary basis: "Hydrocerin is an 'as needed' Rx and you will need to submit an MR007 if you'd like to speak with medical about renewing it.  If your provider determines that this cream is medically necessary, it will be re-ordered for you." Id.  Plaintiff's medical team determined that only a temporary prescription was necessary, and "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017).  Plaintiff also has not produced evidence that decision to switch medications "was based on an ulterior motive beyond routine patient care within the confines of the prison's policies." Fortune v. Hamberger, 379 F. App'x 116, 123 (3d Cir. 2010); see also White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

1990) (doctor's choice of one drug over another is not actionable).

Moreover, there is no evidence from which a reasonable juror could conclude that Administrator Bonds, who is not a medical provider, would have had reason to believe the medical staff was not treating Plaintiff appropriately.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").  Plaintiff told Administrator Bonds via grievance appeal that "I still need the forementioned cream.  I had no success with the nurse," and Administrator Bonds forwarded Plaintiff's request to the medical staff.  ECF No. 49-9 at 8.  This "show[s] that the prison officials ensured that [plaintiff] was under the care of medical personnel and being treated, and therefore that the officials were not deliberately indifferent."  Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill, 372 F.3d at 236.

The Court concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's denial of medical care claims because a reasonable factfinder could not conclude from the evidence that Defendants were deliberately indifferent to any serious medical need.

2.   Conditions of Confinement

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Helling v. McKinney, 509 U.S. 25, 31 (1993)).  "The Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'"  Barndt v. Wenerowicz, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting Farmer, 511 U.S. at 832).  "To establish an Eighth Amendment conditions of confinement claim, [Plaintiff] must show that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a

21

'deliberate indifference' to his health and safety." Id. at 677
(quoting Farmer, 511 U.S. at 834).

      a.   Placement on Constant and Camera Watch

Plaintiff alleges that he was put in the Administrative
Close Supervision Unit ("ACSU") when Guard Martinelli made a
false accusation that Plaintiff had threatened to kill him with
a screwdriver. ECF No. 1 at 16. Eventually a nurse came by to
ask him questions about his mental health.[6] Id. "[A] nurse came
to my cell said I got to answer mental health questions I said I
would not answer questions in front of the guards." Id. At
some point thereafter Hansen, Sgt. Chard, and others placed
Plaintiff into a "rubber room." Id. at 19. Plaintiff claims he
was put on constant watch for no reason whatsoever.

"As defined by DOC Policy, 'Constant Watch status' is the
term used for the procedures used by the DOC to manage suicidal
or potentially suicidal inmates consistent with security
requirements and accepted mental health practices. It is the
uninterrupted observance of an inmate either in person or by
video monitor." Haas Cert. ¶ 10. "Pursuant to DOC policy
regarding Constant Watch status, when an inmate demonstrates or
reports a risk of self-destructive behavior, the inmate will be
placed on Constant Watch status until the inmate is evaluated by

---

[6] The timeline of events is not entirely clear from the
complaint. See supra note 2.

the mental health staff.  Any staff member, whether clinical, custody or administrative has the authority to place an inmate on watch when such behavior is observed." Id.

Defendants state Plaintiff was in the ACSU from May 2018 to August 2018. Id. ¶ 7.  Mr. Haas certifies that "Clauso was placed on Constant Watch from May 27, 2018 to May 29, 2018 after failing to contract for safety, meaning he refused to agree that he was not a danger to himself or others." Id. ¶ 11.  A psychologist authorized this placement.  DSOF ¶ 20.  Plaintiff received "a suicide gown, suicide blanket, a suicide mattress and finger foods," Haas Cert. ¶ 12, and he was evaluated daily, ECF No. 48.  Plaintiff was released from Constant Watch status on May 29, 2018[7] after the psychologist evaluated Plaintiff and Plaintiff affirmed that he was not a danger to himself or others.  Haas Cert. ¶ 11.  Afterwards, he was placed on "camera watch", which "can be used only after an inmate has been on constant watch.  . . . [T]his type of watch involves intermittent observation of an inmate, either by video or in person, in variables not to exceed 15 minutes." Id. ¶ 13.

Plaintiff has not proved an Eighth Amendment claim based on his time on camera and close watch.  The evidence before the

---

[7] The Court presumes the May 29, 2019 date in Mr. Haas' certification is an error as the medical records provided are for May 2018.

Court indicates Plaintiff was placed on Constant Watch for his safety because he refused to state he was not a danger to himself or others.  Plaintiff does "not state any facts that, if proven, would show that [he] was denied one of life's minimal necessities.  At most, the facts that [Plaintiff] did plead allow the potential inference that he suffered or perceived inconvenience, discomfort, and stigma due to [Defendants'] decision to implement a suicide watch . . . ."  Smith v. Bolava, 632 F. App'x 683, 687 (3d Cir. 2015).  "Rather than denying a human need, a suicide watch is canonically understood as protecting inmates who are vulnerable to self-harm."  Id.  The Court shall grant summary judgment to Defendants on this claim.

### b.   Denial of Shower Access

Plaintiff further alleges that Hansen and Martinelli would not let Plaintiff take showers for at least two weeks.  Plaintiff allegedly developed a rash because of not being able to take showers.  ECF No. 1 at 23.  The Court concludes there is a factual dispute precluding summary judgment on this claim.

"[R]easonable access to safe bathing . . . constitute[s] a component of civilized living . . . ."  Partelow v. Massachusetts, 442 F. Supp. 2d 41, 50 (D. Mass. 2006).  The parties agree that Plaintiff did not take a shower for a period of time but dispute the length and the reason why.  Defendants submit copies of the ASCU shower log in support of their motion.

24

ECF No. 47-10.  According to the logbook, Plaintiff refused to take a shower on June 22 and July 2, 4, 6, 9, and 11 in 2018. Id. at 13-15.  Plaintiff's name does not appear in the book for the June 28, 2018 shower date.  Id. at 12-13.  Defendants argue that Plaintiff chose not to take a shower for seven days, which is not enough time to rise to the level of a constitutional violation.  ECF No. 47-2 at 34.  Plaintiff denies refusing showers and states he was intentionally kept from the showers for seventeen days.  Plaintiff produced copies of medical records wherein the medical professional documented Plaintiff's consistent allegation that "he has been kept from showering for 17 days- including today [July 13, 2018].  He denied ever refusing a shower."  ECF No. 56 at 2.  The logbook indicates Plaintiff took a shower on July 13.  ECF No. 47-10 at 16.

This dispute is central to the deliberate indifference claim, and "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  Tolan v. Cotton, 572 U.S. 650, 656 (2014).  Accepting Plaintiff's version of events as true, a reasonable juror could conclude that denying Plaintiff access to showers for seventeen days in summertime, causing a skin condition, violates basic human dignity.  Cf. Fortune v. Hamberger, 379 F. App'x 116, 122 (3d Cir. 2010) (per curiam) (finding that fifteen days without shower did not

violate Eighth Amendment when plaintiff did not "suffer[] any harm as a result of the denial of additional showers").

A reasonable juror could make a reasonable inference of deliberate indifference by Guard Martinelli.  The logbook reflects he was on duty several times when Plaintiff did not shower.  See ECF No. 47-10 at 12-16.  Accepting Plaintiff's version as true for summary judgment purposes, a reasonable juror could conclude Guard Martinelli evidenced a culpable state of mind when he falsified the logbook to state Plaintiff refused a shower.  There is nothing indicating Guard Hansen was on duty, however.  Id.  Therefore, a reasonable juror could not find that Guard Hansen disregarded an excessive risk to Plaintiff's health or safety.  The Court will deny summary judgment to Guard Martinelli and grant summary judgment to Guard Hansen.

Plaintiff asserts that "Willie Bonds knows all the above," ECF No. 1 at 21, but the only "evidence" is Administrator Bonds' responses to Plaintiff's grievances.  ECF No. 47-9 at 11-12.  "A warden's participation in the review of a grievance is insufficient to establish personal involvement . . . ." Robinson v. Green, No. 12-1212, 2012 WL 5401079, at *4 (E.D. Pa. Nov. 5, 2012) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)).  There is no evidence that Administrator Bonds directed Guard Martinelli to deny Plaintiff showers.  The Court

will grant summary judgment to Administrator Bonds on this
claim.

      c.   <u>Targeted Harassment</u>

Plaintiff alleges a harassment campaign by various SWSP
guards; however, most of those allegations are against
defendants who are not a party to this motion.  The only
incidents attributed to the moving Defendants are an allegation
of excessive force against Guard Hansen for purposefully
injuring Plaintiff while handcuffing him and a statement in
Plaintiff's complaint that Guard Martinelli threatened to chain
Plaintiff to the toilet.  As there is no evidence outside of
Plaintiff's complaint that supports his claim that Guard
Martinelli threatened him and there is no evidence supporting a
claim that Guard Martinelli participated in an ongoing
harassment campaign, the Court will grant summary judgment to
Guard Martinelli on this claim.

"SCO Hansen is purposefully closing my skin in the
handcuffs.  My wrists are bruised and lacerated.  I know this is
intentional because SCO Hansen was trained to properly cuff
inmates.  Yet, he does this every time that he cuffs me."  ECF
No. 47-9 at 9.  On June 29, 2018, Plaintiff showed the "small
cuts on both wrists" during a medical visit and stated that
"this is happening each and every time he is handcuffed by a
specific officer."  ECF No. 56 at 3.  Prison staff investigated

Plaintiff's allegation and concluded the "allegations were unfounded but nonetheless staff was reminded about proper protocol and procedure for the application of restraints."  ECF No. 47-9 at 9.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  In an excessive force claim under the Eighth Amendment, the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Wilkins v. Gaddy, 559 U.S. 34, 40 (2010).  "Thus, courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)).

The Court will deny summary judgment to Guard Hansen on this claim.  Viewing the evidence in the light most favorable to Plaintiff, Guard Hansen repeatedly placed handcuffs on Plaintiff in a manner that left bruises and cuts on Plaintiff's wrists.  A social worker documented cuts to Plaintiff's wrists on June 29, 2018.  ECF No. 56 at 3.  A jury could conclude that Guard Hansen

intentionally inflicted the injuries because he did so again and again.  "[T]he absence of significant resulting injury is not a per se reason for dismissing a claim based on alleged wanton and unnecessary use of force against a prisoner.  Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows)."  Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000).

In assessing the use of force, Courts must consider: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response."  Id. at 106 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)) (internal quotation marks omitted).  Defendants have not addressed these factors, nor have they addressed the "particular criteria relevant to the use of excessive force test" that apply when mechanical restraints were used.  Young v. Martin, 801 F.3d 172, 180 (3d Cir. 2015) (citing Hope v. Pelzer, 536 U.S. 730 (2002)); therefore, they have not shown that they are entitled to judgment as a matter of law.

The Court will deny summary judgment to Guard Hansen on this claim and will grant summary judgment to Guard Martinelli and Administrator Bonds.

> ### d.   Denial of Recreation Time and Adequate Light

Plaintiff's final Eighth Amendment claims against moving Defendants are allegations that they denied him recreation time and adequate light while in the ASCU.  The Court will grant summary judgment to Defendants on these claims.

"Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof." Ins. Co. of Greater New York v. Fire Fighter Sales & Serv. Co., 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings."  Id.

Defendants have submitted evidence in the form of Mr. Haas' certification that "the office in the LCP has control of the lighting in each cell.  However, there is always a 'night light' on in each cell, that is not controlled by the officer, such that no inmate is ever without light."  Haas Cert. ¶ 19.  Medical records indicate that a nurse investigated Plaintiff's

claim he had no light and received confirmation that "the light in his cell was indeed already on."  ECF No. 48 at 11. Plaintiff has produced nothing to contradict this evidence.

Defendants have also put forth evidence that Plaintiff was not unconstitutionally deprived of recreation time.  "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). Defendants' uncontradicted evidence indicates Plaintiff had recreational time while in the ACSU except for when he lost recreation privileges as the result of being adjudicated guilty in disciplinary proceedings.  ECF No. 47-4 at 11, 27; DSOF ¶¶ 29-30.  Plaintiff has produced no evidence to contradict this.

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  The "nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings."  Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (internal citation and footnote

31

omitted).  Plaintiff has produced no evidence, let alone more than a scintilla, to create an issue of fact on his inadequate lighting and denial of recreation claims.  Therefore, the Court will grant summary judgment to Defendants on these claims.

    3.   Interference with Legal Mail and Access to the Courts

Plaintiff brings a claim of interference with his legal mail against Administrator Bonds.  He also asserts Defendants violated his right of access to the courts by refusing to let him make telephone calls.  As discussed supra, Plaintiff did not exhaust these claims in his administrative remedies.  Although that alone warrants summary judgment, the Court notes that the claims would fail on their merits as well.

The Constitution permits prisons to restrict prisoners' right to send and receive mail for legitimate penological interests.  Turner v. Safley, 482 U.S. 78, 89 (1987).  However, "prisoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,' and . . . a 'pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech.'"  Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (quoting Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995)) (alteration in original).  Prisoners' legal mail is accorded heightened protection because "opening properly marked court mail . . .

chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Id. at 358-59 (internal quotation marks omitted).

Plaintiff's (unexhausted) grievance states that he "mailed legal mail to the District Court in Camden, the Third Circuit, and to Rutgers (medical). Yet, to date I have received no mail receipts indicating that my mail has been delivered." ECF No. 47-9 at 10. Dianna Sheehan responded: "We can only send in receipts that we have received back." Id. Plaintiff has not provided any evidence from which a reasonable juror could conclude Administrator Bonds had anything to do with this incident. Moreover, a single incident of interfering with legal mail is not enough to prove a First Amendment claim absent evidence of improper motive. See Gibson v. Erickson, 830 F. App'x 372, 373 (3d Cir. 2020) (per curiam); Thompson v. Ferguson, No. 19-4580, 2020 WL 7872629, at *8 (E.D. Pa. Dec. 31, 2020). Plaintiff has produced no such evidence, so the Court will grant summary judgment to Administrator Bonds.

Plaintiff's vague allegation of denial of legal access, which the Court presumes refers to his unexhausted claim in Grievance SWSP18016475 that he was not able to make a legal telephone call, ECF No. 47-9 at 7, does not meet the standard for a denial of access to the courts. For his access to the

courts claim, Plaintiff must prove that "he has suffered an actual injury to his ability to present a claim.  A prisoner can show an actual injury only when a nonfrivolous, arguable claim is lost."  Henry v. Moore, 500 F. App'x 115, 117 (3d Cir. 2012) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis v. Casey, 518 U.S. 343, 352-54 (1996)).  Additionally, "the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement [and] a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim."  Id. (internal citations omitted); see also Lewis, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").  Plaintiff has not produced evidence on either of these requirements, i.e., he has not shown that the inability to make phone calls caused him to lose a direct or collateral challenge to his sentence or conditions of confinement.  The Court will therefore grant summary judgment on this claim.

    4.   Summary

    In conclusion, the Court will deny summary judgment to Guard Hansen on the excessive force claim and to Guard Martinelli on the denial of showers claim.  The Court will grant summary judgment on the remainder of the claims and dismiss Administrator Bonds from this action.

C.    Qualified Immunity

Defendants further assert they are entitled to qualified immunity on Plaintiff's claims.  "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]"  Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).

The evidence viewed in the light most favorable to Plaintiff does not show a constitutional violation of his Eighth Amendment right to adequate medical care or his First Amendment rights to legal mail or access to the courts.  Nor does the evidence indicate a violation of Plaintiff's right to be free from cruel and unusual conditions of confinement because of inadequate lighting, lack of recreation time, or arbitrary close watch placement.  As these claims fail on the first prong, Defendants would be entitled to qualified immunity as well as judgment on the merits for these claims.

The Court will deny qualified immunity on Plaintiff's claim that Guard Martinelli deliberately deprived him of basic hygiene and that Guard Hansen used excessive force against him at this time because there are disputed issues of fact for those claims. Specifically, it is a matter of dispute how long Plaintiff was denied showers, whether he intentionally refused to take showers, and the circumstances surrounding Plaintiff's handcuff injuries. Although the Court is cognizant of the need for resolution of qualified immunity questions at the earliest possible stage of litigation, the Court cannot do so until all the material historical facts are no longer in dispute. "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002). After a jury has decided the remaining factual issues, the Court will reconsider whether qualified immunity is warranted.

D.   Damages

Defendants ask the Court to dismiss any claims Plaintiff may have for punitive, compensatory, and emotional distress damages. The Court declines to do so.

Under § 1983, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be

liable for punitive damages.  See Smith v. Wade, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983).  The Third Circuit "has explained that the term 'reckless indifference' refers to the defendant's knowledge that he 'may be acting in violation of federal law.'"  Whittaker v. Fayette Cty., 65 F. App'x 387, 393 (3d Cir. 2003) (quoting Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000)).  A reasonable jury could decide on the record before the Court that Defendants were aware that they were violating Plaintiff's federally protected rights.  This is therefore a question for the jury.  See Coleman v. Rahija, 114 F.3d 778, 787 (3d Cir. 1997).

"It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory. In other words, 'damages are available under [§ 1983] for actions found . . . to have been violative of . . . constitutional rights and to have caused compensable injury . . . .'"  Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000) (quoting Carey v. Piphus, 435 U.S. 247, 255 (1978) (alteration and omissions in original)).

The Supreme Court has held "that substantial damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right." Id. (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986)); see also Carey, 435 U.S. at 248 (compensatory damages may not be awarded absent proof of actual injury).

Plaintiff has actual costs associated with the two claims that the Court will send to the jury. Giving Plaintiff the benefit of all reasonable inferences on summary judgment, Plaintiff has medical co-pays and prescription costs that are directly associated with the denial of showers and handcuff injuries. ECF No. 56 at 6. The Court will not dismiss these claims at this time.

However, the Court will dismiss any claims for mental or emotional damages. Section 1997e bars compensatory damages for mental and emotional injuries in § 1983 cases brought by prisoners "without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). "[R]eading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result." Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003). The Third Circuit has held that prisoners subject to § 1997e must show "a less-

than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury." Id. at 536.

Viewed in the light most favorable to Plaintiff, the evidence before the Court indicates Plaintiff developed a skin condition as a result of being denied access to the shower and received "small cuts" and bruises from Guard Hansen's handcuffs. There is no evidence to suggest these physical symptoms are more than de minimus; therefore, Plaintiff does not qualify for damages as the result of mental and emotional injuries.

IV.   CONCLUSION

For the reasons set forth above, the Court will deny summary judgment to Guard Hansen on the excessive force claim and to Guard Martinelli on the denial of showers claim.  The Court will grant summary judgment on the remainder of the claims and dismiss Administrator Bonds from this action.  The Court will also dismiss any claim for damages as the result of mental and emotional injuries.

An appropriate Order follows.


Dated: March 24, 2021              s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.